

## John Lancaster v. Dr. John Pace

**Supplemental Disclosure of Dr. Howard Senter**

Dr. Howard J. Senter is a board certified neurosurgeon who is practicing in a city and a hospital that is comparable to that of Dr. John Pace. He has reviewed all of the medical records concerning the care of John Lancaster both before, during and after the surgery performed on him by Dr. Pace. Dr. Senter has reviewed the Complaint in Federal Court, the previous Complaint filed in Polk County, Arkansas, the report of Dr. Rodney Frothingham, the report of Dr. Jack Moriarity, the report of Dr. Craig Kennedy, Southwest EMS, Inc. ambulance records, Mena Regional Health System Hospital records, Healthpark Hospital records and CDs of radiology films, Hot Springs Neurosurgery Clinic records, South Sunflower County Hospital records, North Sunflower Medical Center Hospital records, Indianola Family Medical Group Clinic records, River Oaks Hospital records and CDs of radiology films, St. Dominic Memorial Hospital records, New South Neurospine, LLC records, Nordal Clinic records, Mississippi Urology Clinic, PLLC records, Methodist Rehabilitation Center records, Mississippi Homecare of Brandon home health records, Flowood Family Practice Clinic records, Vision Physical Therapy Clinic records, Jackson Heart Clinic records, Jackson Pulmonary Associates records, the deposition of John Lancaster with errata sheet attached, the deposition of Dr. Lonnie Sessler, the curriculum vitae of Dr. John Pace, Dr. Rodney Frothingham's medical opinions and curriculum vitae, the deposition of Dr. Jack Moriarity, the deposition of Randall Thomas and Life Care Plan, the deposition of Dr. J.D. Day, and Dr. Jack Moriarity's disclosures, medical opinions, and curriculum vitae.

Dr. Howard Senter has the following opinions:

John Lancaster was hospitalized at Mena Regional Health System in Mena, Arkansas from March 15 to March 19, 2008. He was transferred from Mena Regional Health System to HealthPark Hospital after a failed attempt to obtain an MRI of Mr. Lancaster's lumbar spine in Mena. Mr. Lancaster had Cauda Equina Syndrome for five days before he was transferred from Mena Regional Health System to HealthPark Hospital in Hot Springs, Arkansas for care and treatment by Dr. John Pace on March 19, 2008. An MRI scan of the lumbar spine was also attempted at HealthPark Hospital, but it could not be performed. A myelogram CT was performed on Mr. Lancaster, and it revealed a complete block at L3-4 due to an acute herniated disc.

Mr. Lancaster's pre-operative neurological evaluation showed bilateral foot drop and bilateral heel drop. (1-2/5 strength in anterior tibialis and gastroc). Mr. Lancaster's lumbar myelogram showed a complete block at the L3-4 level due to an acute disc herniation superimposed upon pre-existing stenosis, but only moderate stenosis at L2 and L4. Dr. Pace's operative plan was for a left L3-4 discectomy, which was consented to and signed by Mr. Lancaster on his operative permit, and on his consent for Anesthesia. Mr. Lancaster's Authorization for Medical and Surgical Treatment at L3-4 was consented to and signed by John Lancaster. Dr. John Pace also signed the Authorization for Medical and Surgical Treatment. Dr. Pace performed a left L3-4 discectomy on Mr. Lancaster on March 21, 2008.

The operative note was incorrectly dictated to indicate a laminectomy at L3, L4, and L5, which was not performed. The operation performed was a left L3-4 discectomy, which was the

1



operation planned, signed for by Mr. Lancaster, and actually performed by Dr. Pace. This did not result in delay in any treatment or diagnosis of Mr. Lancaster, because the correct surgery was performed by Dr. Pace.

After Dr. Pace performed surgery on Mr. Lancaster, his bilateral foot strength improved. He was discharged from the hospital on March 26, 2008, and he moved to Indianola, Mississippi, where he lives. Mr. Lancaster was requested to follow-up with his PCP (primary care physician), Dr. Donahoe, on April 3, 2008 in Mississippi. Home Health was to continue with his physical therapy and dressing changes with Sunflower Home Health. Mr. Lancaster's medical records were given to him when he was discharged from HealthPark Hospital, which included his final diagnosis that Dr. Pace performed a L3-4 discectomy on him. Mr. Lancaster was told to take his medical records to his physician, Dr. Donahoe in Mississippi. Mr. Lancaster was also requested to call Dr. Pace's office for a post-operative visit to see Dr. Pace within four to six weeks after his discharge from HealthPark Hospital. Mr. Lancaster did not call Dr. Pace and schedule the follow-up office visit Dr. Pace requested.

The medical records at HealthPark Hospital reflect that Mr. Lancaster had incomplete Cauda Equina Syndrome at HealthPark Hospital, and he did not have overflow urinary incontinence while he was a patient at HealthPark Hospital. The medical records indicate that John Lancaster improved after the surgery Dr. John Pace performed on him, and he only deteriorated after he was discharged from the hospital on March 26, 2008 and returned to Mississippi, due to the progressive stenosis that occurred over the next six to twelve months. A post-operative MRI and a myelogram CT were done by physicians in Mississippi in October and November of 2008, and they showed severe stenosis, but no surgery was performed on Mr. Lancaster by these physicians until March of 2009.

The left L3-4 discectomy that Dr. Pace performed on Mr. Lancaster was the appropriate operation for his acute L3-4 herniated disc. This was well within the appropriate standard of care for the treatment of John Lancaster's condition when he was cared for and treated by Dr. Pace. It is the opinion of Dr. Howard Senter that Dr. John Pace provided medical care and treatment on John Lancaster and performed surgery on him that was within the standard of care of a neurosurgeon practicing in Hot Springs, Arkansas or a similar locality in March of 2008, and there was nothing that Dr. Pace did or allegedly failed to do that was a violation of the standard of care and that was a proximate cause of injury or damage to John Lancaster.

Dr. Senter is critical of Dr. Finck for failing to recognize or diagnose a neurosurgical or neurological emergency and failing to timely obtain a neurosurgical consult and failing to timely transfer John Lancaster to another facility.

Dr. Senter is critical of Dr. Moriarty for performing a pedicle screw fixation with fusion on lumbar stenosis on John Lancaster, which is in violation of the guidelines of the AANS published in 2005 and reaffirmed in 2014.

Dr. Howard Senter disagrees with the opinions of the Plaintiff's expert witness, Dr. Jack Moriarity. Dr. Senter also disagrees with Dr. Moriarty's opinion that Dr. Pace should have performed a different surgery. Dr. Senter also states that Dr. Moriarty did not perform the surgery

2

he claims Dr. Pace should have performed on Mr. Lancaster when Dr. Moriarty later operated on John Lancaster. Dr. Senter disagrees with the opinion of Dr. Moriarty that John Lancaster would have had a better chance of recovery if Dr. Pace had operated on John Lancaster on March 20, 2008 rather than March 21, 2008.

Dr. Senter incorporates by reference his deposition testimony that he gave on May 28, 2015, which the Plaintiff's counsel attended.

Dr. Senter reserves the right to amend, supplement and/or modify his opinions and disclosures as additional information and opinions become available, and he will incorporate them herein by reference to this disclosure.

Dr. Senter's curriculum vitae is attached for your review and reference.

At this time, it is anticipated that Dr. Senter will use Mr. Lancaster's medical records and radiology films as exhibits, including, but not limited to, Dr. Pace's records, the intraoperative report of Dr. Pace, the consent form of John Lancaster to the surgery recommended by Dr. Pace, HealthPark Hospital records, Mena Regional Health System records, Dr. Finck's records, radiology films and scans from HealthPark Hospital, discharge summary from HealthPark Hospital, nursing notes and flowsheets, radiology films and scans that were taken after John Lancaster left HealthPark Hospital, Dr. Donahoe's office records, Dr. Frothingham's records, Dr. Moriarty's office records and his records regarding the medical care, treatment, and surgery he provided to John Lancaster, and the medical records of Mr. Lancaster's medical care and treatment by physicians in Mississippi.

At this time, it is anticipated that Dr. Senter will use the following as exhibits or demonstrative aids at the trial of this case, actual models of the spine, a model of the spine with pedicle screw fixation, Medi-Visual aids, including axial, posterior, and/or sagittal views of a discectomy, laminectomy, Cauda Equina Syndrome, a herniated disc, normal spine, and post-operative spine following discectomy, the journal articles that have been provided to the Plaintiff in discovery and the journals articles that were brought to Dr. Senter's deposition, including Time-Dependent Surgical Outcomes Following Cauda Equina Syndrome Diagnosis, Factors Affecting Long-Term Functional and Sphincteric Outcome, Cauda Equina Syndrome: Outcome and Implications for Management, and the publications in 2005 and 2014 of the AANS Guidelines for the Performance of Fusion Procedures for Degenerative Disease of the Lumbar Spine. Dr. Senter reserves the right to supplement any exhibits or documents that are necessary or are needed to support his opinions and any other exhibits or documents identified by the Plaintiff.

Dr. Senter charges $500.00 for his review of the medical records, $3200 for his video deposition, and $7500 for one-half day trial if he is required to be out of the office for one full day. Dr. Howard Senter has attached a list of cases in which he has testified as an expert witness in trial and deposition in the previous four years. All of these cases are workers comp or motor vehicle accidents. Dr. Senter has not provided testimony as an expert in trial or at a deposition in a medical malpractice case in the preceding four years. Dr. Senter has tried to locate any additional cases that he has testified in during the past four years, but he has not been able to locate any additional cases at this time.

3

All of Dr. Howard Senter's opinions are within a reasonable degree of medical certainty.

*[signature]*

Howard J. Senter, M.D.

4