IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN LANCASTER                                                                                    PLAINTIFF

v.                                              NO. 6:13-cv-6034-SOH

JOHN R. PACE, M.D.; HOT SPRINGS
NEUROSURGERY CLINIC, P.A.; and
LONNIE SESSLER, M.D.                                                                      DEFENDANTS

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE
TO MOTION TO FILE AN AMENDED ANSWER**

**INTRODUCTION**

The events giving rise to this case occurred in 2008, a date this is important to the final resolution of the motion. Now, in 2015, almost literally on the eve of trial, Defendants filed this motion seeking to amend the answer to add allegations of fault against a non-party, Dr. John Finck. Defendants' motion is based entirely on what they describe as their substantive "right" to an allocation of fault created by Act 1116 of 2013. As described below, as applicable to this case, Defendants have no such substantive right under Arkansas law, the law applicable to this case.

*1.     Development of Allocation of Fault in Arkansas.*

It is helpful to trace the development of this issue in Arkansas. Act 649 of 2003, commonly known as the Civil Justice Reform Act, abrogated the common law doctrine of joint and several liability and replaced it with separate proportional liability, called "several" liability by the Act. This abrogation created a right in each defendant sued to a judgment in which he or she is liable for no more than his or her proportional share of damages. 2003 Acts of Ark. No. 649 § 1(b). The legislatively created procedural device implementing Act 649's change in the common law was

declared unconstitutional by *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, 308 S.W.3d 135 (2009), but *Johnson* did not replace that procedural device with something else. Defendants in cases where absent tortfeasors could be held responsible for some of the plaintiff's injuries looked to a contribution action to accomplish a mathematical allocation of fault to every tortfeasor whether or not that tortfeasor was a party to the case from whom the plaintiff sought a money judgment at the time of the verdict.

But *ProAssurrance Indemnity Co., Inc. v. Metheny*, 2012 Ark. 461, 425 S.W.3d 689 (2012), and *St. Vincent Infirmary Medical Center v. Shelton*, 2013 Ark. 38, 425 S.W.3d 761 (2013), held that Act 649 contained no right to allocation and that a contribution action seeking only an allocation of fault was not cognizable due to the language of the contribution statute. So, the Legislature enacted Act 1116 of 2013, which alters the contribution statute in a clear effort to remedy the flaws identified by *Metheny* and *Shelton*: want of a "right" to allocation and lack of a cognizable cause of action for contribution solely to allocate fault. This right is what Defendants rely on in this case.

But two cases from the Arkansas Supreme Court analyzing Act 1116 create a stumbling block for Defendants. *J-McDaniel Constr. Co. v. Dale E. Peters Plumbing Ltd.*, 2014 Ark. 282, 436 S.W.3d 458 (2014), held that a traditional contribution action through which one tortfeasor actually seeks a contribution payment from another tortfeasor survived Act 649. *English v. Robbins*, 2014 Ark. 511 (2014), held, on the other hand, that Act 1116's creation of a right to allocation of fault where no money judgment is sought from an absent tortfeasor was something new in the law that could not be applied retroactively. Notably, the defendants in *English* did exactly what Defendants want to do here; they relied on the "right" to allocation created by Act 1116 as the basis for allocation of fault in a case that accrued prior to Act 1116's passage. The result was a reversal for retroactively applying a substantive right that has not retroactive application.

But the complicated history of allocation of fault in Arkansas does not end there. On August 2, 2013, the Arkansas Supreme Court appointed a task force to address concerns arising in the 2013 Legislative session, including an effort to strip the Court of its exclusive rule making authority. *In re Special Task Force on Practice and Procedure in Civil Cases*, 2013 Ark. 303 (Aug. 2, 2013) (*per curiam*). The Court noted that the debate arose even though no "recommendations" had been submitted to the Court for changes to rules of pleading, practice and procedure that were implicated in the debate, namely those "concerning 'damages and/or liability in civil litigation.'" *Id.* at 2. The Special Task Force was appointed to "insure thorough examination of the concerns" raised in the legislative debate. *Ibid.*

The Special Task Force issued its Interim Report at the end of December, 2013. *In re Special Task Force on Practice and Procedure in Civil Cases*, 2014 Ark. 5 (Jan. 10, 2014) (*per curiam*). One topic addressed by the Task Force by way of proposed amendments to Rules 9, 49 and 52 of the Arkansas Rules of Civil Procedure was allocation of fault and the interplay between Act 649 of 2003 and Act 1116 of 2013. The report was published, comments were sought and received on the proposed changes, and those comments resulted in changes to the proposed Rules by the Court's Committee on Civil Practice. *In re Special Task Force on Practice and Procedure in Civil Cases—Ark. R.Civ. P. 9, 49, 52 and Ark. R.App. P—Civ. 8*, 2014 Ark. 340 (Aug. 7, 2014). In August, 2014, the Court adopted changes to Rules 9, 49, and 52, effective January 1, 2015, that put in place a procedure for allocating fault to absent alleged tortfeasors in civil cases. *Ibid.*

In essence, these Rule changes allow juries to assess "fault" against parties not sued by the plaintiff, or with whom the plaintiff has already settled before trial, when the procedures are followed and where the language applies. But the Rules lift language directly from Act 1116 of 2013 and are dependent on the "right to allocation" created by Act 1116.

Returning to *English v. Robbins*, that case was decided *after* the Rules above were issued. Yet, the Court did not comment on how that holding squared with its alterations to Rules 9, 49 and 52 presumably because the new Rules, while issued, were not in effect. But one reason *English* was reversed was because the right to allocation, on which the Rules depend, could not be applied retroactively. Thus, at minimum, the applicability of Rules 9, 49, and 52 even in an Arkansas state court to a case that accrued before Act 1116 was enacted is suspect. The better result is that the law in effect prior to Act 1116 with respect to instructing the jury should apply. Attention now turns there.

*2.     The Metheny Jury Instruction.*

The winding road described above notwithstanding, the resolution to the question is quite easy under Arkansas law. *Metheny*, *supra*, is a case where the defendant sought to allocate fault to a non-party by having the jury assess the non-party's "fault" on the verdict form. The trial court refused to do so and instead instructed the jury that it could only award against the defendant the degree of fault for which the defendant was responsible. The Arkansas Supreme Court affirmed this approach. That affirmance was reinforced by the Arkansas Supreme Court's opinion in *Shelton*, *supra*.

This Court can follow the same path. The jury should be instructed as follows:

> Under Arkansas law, you may not allocate to [Defendants] any of the fault of any other person or entity. If you find in favor of the plaintiff and against [Defendants], you may only allocate to [Defendants], the degree of fault attributable to [Defendants'] acts or omissions.

Source:     Act 649 of 2003
            *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241,
            308 S.W.3d 135 (2009).

This instruction is designed to keep in place the abrogation of joint and several liability but tells the

jury that it can allocate to Defendants only the degree of harm their fault caused.

Verdict forms can then match these instructions. The first interrogatory should ask the jury if Defendants were negligent and caused harm to the Plaintiff. The second interrogatory should ask the jury to "state the amount of any damages, if any, which you find from a preponderance of the evidence were sustained by the Plaintiff *which is attributable to the negligence of Defendants*." The jury is thus limited in its award only to the fault of Defendants.

For the reasons set forth herein, Defendant Pace's Motion to Amend should be denied, as its obvious purpose is to allow instruction to the jury that would be improper and prejudicial to Plaintiff John Lancaster.

Respectfully submitted,

BY: */s/ Lamar Porter*
Lamar Porter, ABN 78128
Attorney for Plaintiff
THE BRAD HENDRICKS LAW FIRM
500 C Pleasant Valley Drive
Little Rock, AR  72227
(501) 221-0444
lporter@bradhendricks.com

And

Stuart B. Harmon, Esq.
C. Maison Heidelberq, Esq.
Heidelberg Harmon, PLLC
795 Woodlands Parkway, Suite 220
Ridgeland, MS  39157
sharmon@heidelbergharmon.com
mheidelberg@heidelbergharmon.com

CERTIFICATE OF SERVICE

      I hereby certify that on July 1, 2015, I presented the foregoing to the Clerk of Court for filing and upload to the CM/ECF system, which shall send notification of such filing to the following:

Walter Cox, Esq.
Cox, Cox & Estes, PLLC
P.O. Box 878
Fayetteville, AR  72702
wcox@coxfirm.com

Phil Malcom, Esq.
Malcom Law Firm
2226 Cottondale Lane, Suite 100
Little Rock, AR  72202-2060
pmalcom@malcomlawfirm.com

                                      */s/ Lamar Porter*
                                      Lamar Porter